UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                            :

**CHRISTIAN QUINTANA GRANCE,**
                            :

                     Petitioner,
                            :

            – against –
                            :

                            :

**RAUL MALDONADO, JR.,** in his official
capacity as Warden of the Metropolitan
Detention Center, Brooklyn; **JUDITH**
**ALMODOVAR,** in her official capacity as
Acting New York Field Office Director for U.S.
Immigration and Customs Enforcement; **TODD**
**BLANCHE,** in his official capacity as Acting
Attorney General; **MARKWAYNE MULLIN,**
in his official capacity as Secretary of Homeland
Security; **TODD M. LYONS,** in his official
capacity as Acting Director U.S. Immigrations
and Customs Enforcement,

                   Respondents.
--------------------------------------------------------------- X

| : | **MEMORANDUM DECISION AND ORDER** |
| :-- | :-- |
| : | 26-CV-3346 (AMD) |

**ANN M. DONNELLY**, United States District Judge:

On March 16, 2016, U.S. Immigration and Customs Enforcement ("ICE") arrested and

detained the petitioner as he was boarding a bus near his home in Queens, New York.  (ECF No.

1 ¶ 23; ECF No. 5 at 1.)  He was taken to 26 Federal Plaza in Manhattan for processing, and then

moved to the Delaney Hall Detention Facility in New Jersey on March 18, 2026.  (ECF No. 1

¶ 23.)  On March 30, 2026, the petitioner was transferred to the Metropolitan Detention Center

("MDC") in Brooklyn, New York, where he is currently detained.  (ECF No. 5-1 ¶ 19.)  The

government concedes that it detained the petitioner initially under 8 U.S.C. § 1225(b)(2),

pursuant to its July 2025 interpretation of immigration laws.  (*Id.* ¶ 21.)

More than a month later, on April 28, 2026, the Second Circuit decided *Barbosa da*

*Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026).  At issue in that case was the government's recent

application of 8 U.S.C. § 1225(b)(2), instead of 8 U.S.C. § 1226(a) — the section it had applied for nearly 30 years — to noncitizens like the petitioner, who entered the United States without inspection and were not apprehended while entering the country or shortly thereafter. *Cunha*, 175 F.4th at 69. Under 8 U.S.C. § 1226(a), noncitizens are eligible for release on bond pending the outcome of their removal proceedings. *Id.* at 72–74. Beginning in 2025, the government took the position that those noncitizens, some who had been living in the United States for years, were "seeking admission" to the country and must be detained pursuant to 8 U.S.C. § 1225(b)(2), without any opportunity for a bond hearing. *Id.* at 69, 74–79. The Second Circuit rejected "the government's novel interpretation of the immigration statutes," which "defie[d] their plain text," and concluded that the government changed its "long-settled practice" to avoid the procedural protections provided to a noncitizen under 8 U.S.C. § 1226(a) and to "justify detaining noncitizens . . . who clearly meet the government's own criteria for release." *Id.* at 69.

After this ruling, however, the government did not release the petitioner (ECF No. 5-1 ¶¶ 21–24), even though his detention unequivocally violated the law, *Cunha*, 175 F.4th at 69. Instead, the government maintained that it was now holding the petitioner under 8 U.S.C. § 1226(a). (ECF No. 5 at 2.)

The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; and Article I, Section 9, of the Constitution of the United States. (ECF No. 1 at 2.) For the reasons that follow, the Court grants the petition for habeas corpus.

On August 6, 2022, the petitioner, a Paraguayan national, entered the United States without inspection near Andrade, California. (ECF No. 5-1 ¶ 2, 11.) He gave U.S. Customs and Border Protection ("CBP") officers a false name and said he was from Mexico. (*Id.* ¶ 11.) ICE granted him voluntary departure to Mexico. (*Id.*) The government asserts that the petitioner departed the country sometime thereafter, then re-entered from Mexico "without inspection on an unknown date at an unknown location." (*Id.* ¶¶ 12–13; ECF No. 5-2 at 4.) However, the petitioner maintains that he stayed in the United States. (ECF No. 7 at 4 n.1.)

In February 2023, the petitioner was charged with fraud in Paraguay. (ECF No. 5-1 ¶ 12.) A local court issued a summons, but the petitioner did not respond or appear; his mother told authorities that he was living abroad. (ECF No. 5-3 at 3.) As a result, the court declared him in contempt and ordered a stay of the proceedings. (*Id.*) The government claims, without any documentary support, that the petitioner "was convicted of fraud and sentenced to 8 years of imprisonment and fled Paraguay" in December 2023. (ECF No. 5-1 ¶ 12.) The petitioner responds that he did not return to Paraguay and could not have been convicted in absentia under Paraguayan law. (ECF No. 7 at 4 n.1.)

On March 16, 2016, ICE detained the petitioner, as part of a "targeted operation to apprehend him" (ECF No. 5 at 1), while he was boarding a bus near his home in Queens, New

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

[2] Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025).

York (*Id.*; ECF No. 1 ¶ 23).[3]  ICE served him with a Form I-862, Notice to Appear ("NTA"), which charged him as removable pursuant to 8 U.S.C. §1182(a)(6)(A)(i), because he was in the United States without being admitted or paroled.  (ECF No. 5-1 ¶ 16.)  ICE transferred the petitioner to the MDC on March 30, 2026, where he is still detained.  (*Id.* ¶¶ 17, 19.)  The government concedes that it detained the petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).  (*Id.* ¶ 21.)  As explained above, on April 28, 2026, the Second Circuit held that the government could not use § 1225(b)(2)(A) to detain noncitizens who entered the United States without inspection and were not apprehended while entering the country or shortly thereafter.  *Cunha*, 175 F.4th at 69.  Nevertheless, ICE did not release the petitioner.  On May 8, 2026, ICE's New York office "received a list of aliens in custody who may be subject to detention under 8 U.S.C. § 1226(a) in light of the Second Circuit's decision;" the petitioner was on that list.  (ECF No. 5-1 ¶ 22.)

On May 12, 2026, ICE did an "individualized custody determination under § 1226(a)," (*Id.* ¶ 23), and concluded that the petitioner established that he did not pose "a danger to persons or property" (ECF No. 5-6 at 2).  However, ICE determined that the petitioner "had not established that he did not pose a flight risk;" the only basis for this decision was that the petitioner "entered the United States unlawfully without inspection or parole by an immigration official."  (ECF No. 5-1 ¶ 23; ECF No. 5-6 at 3; *see also* ECF No. 5-7 at 2.)  On June 1, 2026, the petitioner filed an application for relief from removal.  (ECF No. 5-1 ¶ 25.)  A merits hearing on that application is scheduled for August 10, 2026.  (*Id.* ¶ 26.)

---

[3] The government's assertion that "ICE issued a Form I-200 Warrant for Arrest of Alien for Petitioner based on his conviction in Paraguay and his unlawful status in the United States," (ECF No. 5-1 ¶ 14), is not supported by the record, which does not include any documents reflecting that the petitioner was actually convicted in Paraguay, that ICE knew of the Paraguay matter when it arrested him in March, or that ICE considered the issue when it reviewed his detention in May (*see* ECF Nos. 5-2, 5-3, 5-4, 5-5, 5-6, 5-7, 5-8).  Indeed, ICE officials did not cite the Paraguay matter in the detention determination.  (ECF No. 5-1 ¶ 23; ECF No. 5-6 at 3.)

The petitioner filed this petition for a writ of habeas corpus on June 4, 2026. (ECF No. 1.) The same day, the Court ordered the government to show cause why a writ of habeas corpus should not be issued and to address "whether the petition is controlled by the Second Circuit's opinion in [*Cunha*]." (*ECF Order dated June 4, 2026.*) On June 9, 2026, the government filed its opposition to the petition and response to the Court's Order to Show Cause (ECF No. 5), along with a declaration by an ICE deportation officer (ECF No. 5-1), a Form I-213, Record of Deportable/Inadmissible Alien (ECF No. 5-2), a copy of the Paraguayan court's contempt order (ECF No. 5-3), a Form I-200, Warrant for Arrest of Alien (ECF No. 5-4), the NTA (ECF No. 5-5), a custody determination worksheet (ECF No. 5-6), a Form I-286, Notice of Custody Determination (ECF No. 5-7), and a notice for the petitioner's August 10, 2026 merits hearing on his application for relief from removal (ECF No. 5-8). The petitioner replied on June 15, 2026. (ECF No. 7.)

## LEGAL STANDARD

A district court is empowered "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In seeking a writ of habeas corpus, the petitioner alleges that the government violated his procedural due process rights under the Fifth Amendment, as well as Section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). (ECF No. 1.) He claims that he

5

was unlawfully subjected to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), without the due process required by 8 U.S.C. § 1226(a). (*Id.* ¶¶ 4–5.) Rather than defend its actions at the time it detained the petitioner, the government claims that it changed the basis for the petitioner's detention after the Second Circuit decided *Cunha*, and that it is now lawfully detaining the petitioner under 8 U.S.C. § 1226(a), because ICE made an "individualized custody determination" on May 12, 2026 — two months after it detained the petitioner. (ECF No. 5 at 2.)

## I.   Jurisdiction

The government asserts that the Court does not have jurisdiction to review its actions, because "[o]nce ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination." (ECF No. 5 at 3.) The Court, however, is not "pry[ing] behind the discretionary curtain" of ICE's May 12, 2026 decision; rather, it "assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [the petitioner]'s detention comports with due process (it does not)." *Pastrana-Beltran v. Mullin*, No. 26-CV-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (stating that Section 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law" (citation modified)).

## II.   Administrative Exhaustion

Nor is the Court persuaded by the government's administrative exhaustion argument. (*See* ECF No. 5 at 4–5.) The statute governing habeas petitions, 28 U.S.C. § 2241 does not include a statutory exhaustion requirement. *See Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (noting that a habeas petitioner "is not subject to the INA's statutory exhaustion

requirement").  However, "the less stringent judicial exhaustion requirement" still applies to habeas petitions filed by immigration detainees.  *Id.*; *see also J.U. v. Maldonado*, 805 F. Supp. 3d 482, 489 (E.D.N.Y. 2025) ("Courts generally require administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus." (citation modified)).  This exhaustion requirement is a "prudential matter," *J.U.*, 805 F. Supp. 3d at 489, and may be excused when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F. 3d at 62 (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

The petitioner alleges that he was denied due process under Section 1226(a) and the Fifth Amendment, because ICE detained him without first doing an individualized assessment to determine whether he was dangerous or a flight risk.  (ECF No. 1 ¶¶ 68–77.)  This is obviously a substantial constitutional question.  *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496–98 (S.D.N.Y. 2025) (excusing administrative exhaustion where the petitioner argued that he was detained under 8 U.S.C. § 1226(a) without an initial custody determination).  The government argues that the petitioner has an adequate administrative remedy — he can request a bond hearing before an immigration judge ("IJ") and appeal the IJ's ruling to the Board of Immigration Appeals if necessary.  (ECF No. 5 at 4–5.)  But "[t]he very nature of the Petition, and the key fact that the Government does not dispute, is that [the petitioner] was detained pursuant to an ICE policy that [was] defined by its systematic denial of the very administrative remedy Respondents urge [him] to avail [himself] of." *Chipantiza-Sisalema v. Francis*, No. 25-CV-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025).  According to Section 1226(a)'s

7

implementing regulations, IJs review appeals from ICE's "initial custody determination[s]." 8

C.F.R. § 1236.1(d)(1). In this case, however, "there [was] no 'initial decision' for [the

petitioner] to 'appeal.'" *Lopez Benitez*, 795 F. Supp. 3d at 497 (quoting *Chipantiza-Sisalema*,

2025 WL 1927931, at *3)). The fact that a petitioner can file an appeal with an IJ is "no

substitute for the requirement that ICE engage in a 'deliberative process prior to, or

contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart

of the Due Process Clause." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (quoting *Lopez*,

2018 WL 2932726, at *15).

III.    **Denial of Due Process**

    a.    **ICE Unlawfully Detained the Petitioner**

The petitioner has lived in the United States for years. (ECF No. 5-1 ¶¶ 11, 13; ECF No.

7 at 4 n.1.) Accordingly, his detention was always governed by Section 1226(a), not Section

1225(b)(2). *Cunha*, 175 F.4th at 69–70. Under Section 1226(a), ICE must make an

individualized custody determination, before or contemporaneous with the arrest, about whether

detention is appropriate based on an assessment of danger and flight risk. *S.G.V. v. Genalo*, No.

26-CV-2893, 2026 WL 1492770, at *1 (E.D.N.Y. May 28, 2026). According to the government,

ICE did not do this assessment until it filled out the custody determination "worksheet" and

"Notice of Custody Determination" — two months after it arrested the petitioner. (*See* ECF No.

5-1 ¶¶ 21–24; *see also* ECF Nos. 5-6, 5-7.)[4] When a petitioner is detained under Section

---

[4] The settlement agreement in *Velesaca v. Decker*, No. 20-CV-1803 (S.D.N.Y.) requires ICE to do individualized custody determinations for noncitizens detained under Section 1226(a) and prepare a custody determination worksheet within 48 hours of the noncitizen's detention. *See A.P.A. v. Arteta*, No. 26-CV-3334, 2026 WL 1587452, at *2 (S.D.N.Y. June 3, 2026) (summarizing the *Velesaca* settlement). ICE's failure to follow these procedures when it detained the petitioner in March further illustrates that ICE was not relying on Section 1226(a), but on § 1225(b)(2), which is illegal. *Cunha*, 175 F.4th at 69–70.

1226(a), and "the record demonstrates that the government . . . made no individualized determination to justify detaining the petitioner," the detention violates Section 1226(a) and the Due Process Clause of the Fifth Amendment. *Ye v. Maldonado*, No. 25-CV-6417, 2025 WL 3521298, at *7–8 (E.D.N.Y. Dec. 8, 2025).

### b. ICE Cannot Cure its Failures Retroactively

Ignoring the fact that it detained the petitioner illegally, the government argues, in essence, that it can justify that illegality simply by putting a different label on the detention, and declaring its belated individual assessment sufficient under Section 1226(a). (ECF No. 5 at 1–3.) *See also Inestroza Carbajal v. Frazier*, No. 26-CV-2778, 2026 WL 1309265, at *1 n.1 (E.D.N.Y. May 12, 2026) ("In what could be termed legal gaslighting, Respondents act — by not conceding the illegality of the initial detention — as if *Barbosa da Cunha* announced a mere change in law, permitting ongoing detention of individuals detained before April 28, 2026.") The government's position is untenable.

"An executive agency, like ICE, is bound by the bases it used to justify its decision — here the arrest and detention — in the first instance, not reasons it comes up with afterwards." *Id.* at *1 (collecting cases). "To allow the contrary would permit Respondents to flout the demands of due process and the regulations governing initial custody determinations." *S.G.V.*, 2026 WL 1492770, at *2. Courts in this district have rejected similar attempts to re-characterize illegal detentions. *See, e.g.*, *Inestroza Carbajal*, 2026 WL 1309265; *S.G.V. v. Genalo*, 2026 WL 1492770; *D.D.T. v. Maldonado*, No. 26-CV-3245, 2026 WL 1662730 (E.D.N.Y. June 9, 2026); *Pastrana-Beltran*, 2026 WL 1398609; *C.A.R. v. Genalo*, No. 26-CV-4275, 2026 WL 1506417 (S.D.N.Y. May 29, 2026); *N.A.P.P. v. Mullin*, No. 26-CV-3387, 2026 WL 1674158, at *2–3 (E.D.N.Y. June 10, 2026).

More fundamentally, the government does not appear to have given even passing consideration to its obligations under the Fifth Amendment's Due Process Clause — that it may not deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citations omitted). To determine whether the government's processes comport with due process, the Court applies the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez*, 978 F.3d at 851 (applying *Mathews*). The Court considers: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor — the private interest affected by the government's action — overwhelmingly favors the petitioner whose interest is "the most significant liberty interest there is — the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. "A person's liberty cannot be abridged without 'adequate procedural protections.'" *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434, at *8 (E.D.N.Y. Oct. 5, 2025) (quoting *Zadvydas*, 533 U.S. at 690). The government does not deny that it afforded the petitioner no process when agents arrested him near his home. (*See* ECF No. 5 at 1–2; ECF No. 5-1 ¶¶ 15, 21.) The first *Mathews* factor thus weighs heavily in the petitioner's favor.

The second *Mathews* factor — the value of additional safeguards — also favors the petitioner. The government detained the petitioner for two months before doing a custody

determination. That proposal not only "present[ed] a high risk of erroneous deprivation,"

*Inestroza Carbajal*, 2026 WL 1309265, at *3, it caused an erroneous deprivation. "Other than in

conclusory fashion," the government does not explain why the petitioner is a flight risk or a

danger to the community. *Id.* It provides no evidence to support its claim that it conducted the

custody determination on an individualized basis, as required by Section 1226(a). (*See* ECF No.

5-1 ¶ 23.) Indeed, ICE says that it arrested the petitioner based on his supposed fraud conviction

in Paraguay, but it did not mention the Paraguay matter in the custody determination form, in

which it conceded that the petitioner "established that he/she does not pose a danger to persons

or property." (ECF 5-6 at 2.). As for whether the petitioner was a flight risk, ICE gave only one

reason— he "illegally entered the U.S. without inspection or parole by an immigration official."

(*Id.* at 3.) This is not sufficient. "The problem is that a per se determination of this sort — on

his status alone, rather than any assessment of the factors listed on the form — comports not with

1226(a), but with Respondents' desired policy of mandatory detention under 1225(b)(2)(A) for

any noncitizens who entered the U.S. without inspection however long ago . . . . [This] threatens

a ping pong approach to Petitioner's liberty that is constitutionally untenable." *Pastrana-

Beltran*, 2026 WL 1398609, at *2; *see also Cajamarca-Janza v. Soto*, No. 26-CV-3066, 2026

WL 1506777, at *5 (E.D.N.Y. May 29, 2026) (quoting *Pastrana-Beltran*); *Cunha*, 175 F.4th at

95 (noting that noncitizens in the country unlawfully "cannot be said, as a categorical matter, to

pose a danger to the community or risk of flight"). The value of additional safeguards — an

individualized decision made at or near the time of detention, and the opportunity to appeal to a

neutral decisionmaker — thus also weighs heavily in the petitioner's favor.

The third *Mathews* factor is the government's interest, and this, too, weighs against the

government. The government's interest in detaining people under 8 U.S.C. § 1226(a) is valid if

it "advances a legitimate governmental purpose," such as "'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 219 (S.D.N.Y. 2025) (quoting *Zadvydas*, 533 U.S. at 690). Of course, when ICE detained the petitioner in March, it made no findings about dangerousness or flight risk; it simply detained him under Section 1225(b)(2). In its effort to relabel that 1225(b)(2) detention, the government did not claim that the petitioner is a danger to the community, and, as explained above, did not advance any credible claim that he is really a flight risk. In any event, making a custody determination two months after detention "does not advance any legitimate governmental purpose, since the only reason for the delay was the Government's decision to use a process deemed illegal by the Court of Appeals." *Inestroza Carbajal*, 2026 WL 1309265, at *4.

As evaluation of the *Mathews* factors demonstrates, the government violated the petitioner's due process rights when it detained him without an initial custody determination, and continued to detain him even after the Second Circuit found that its processes were illegal.

## IV.     Scope of Relief

Under 8 U.S.C. § 1226(a) and the Fifth Amendment, the government denied the petitioner due process when it detained him. The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("The traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."). And as discussed, the constitutional violation the petitioner suffered — the government's failure to conduct any kind of individualized assessment before detaining him, and for two months thereafter — renders any post-deprivation review by an immigration judge inadequate. *Chipantiza-Sisalema*, 2025 WL

1927931, at *3.  The government's ongoing detention of the petitioner, in the face of this complete failure of process, entitles him to immediate release.

**CONCLUSION**

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241, (ECF No. 1), is granted.

The government is directed to release the petitioner from custody within 24 hours of this Order.  The government is further directed to return to the petitioner any and all funds and/or property that was seized from the petitioner at the time of arrest.  The government is directed to certify compliance with the Court's Order by filing a letter on the docket within 48 hours of this Order.  The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).  This order includes "an injunction barring deprivation [of any] of the [petitioner's] rights without the requisite procedural protections." *Khabazha v. U.S. Immigr. & Customs Enf't*, 25-CV-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering that the government release the petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return him to the "status quo ante.")  Should the petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within

thirty days of this Order.  The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

      s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
      June 24, 2026